ADAM GORDON.
United States Attorney
BETSEY BOUTELLE
Assistant U.S. Attorney
California Bar No. 299754
IAN PIKE
Assistant U.S. Attorney
California Bar No. 329183
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8764 | (619) 546-8936
Fax: (619) 546-7751
Email: betsey.boutelle@usdoj.gov
Email: ian.pike@usdoj.gov

Attorneys for Defendant
THE UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

THOMAS J. SCHOENBECK,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 23-cv-1635-RSH-JLB

**DEFENDANT THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

DATE: July 6, 2026
CTRM: Schwartz 3B
JUDGE: Robert S. Huie

[PER CHAMBERS RULES NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT]

## NOTICE OF MOTION

Please take notice that on July 6, 2026, or as soon thereafter as the matter will be heard, in Courtroom 3D of the Edward J. Schwartz United States Courthouse, located at 333 West Broadway, San Diego, California, 92101, Defendant the United States of America will move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion will be based on this notice, the following memorandum of points and authorities, the declaration and exhibit filed with this motion, any other evidence in the Court's records, and such further evidence and argument as the Court may receive at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Under controlling tort law, the Plaintiff in this medical malpractice action must establish both the applicable standard of care and medical causation of any injuries—neither of which can be proven without expert testimony. Plaintiff has no experts. As such, it is impossible for him to prevail at trial. Because Plaintiff can never meet his burden of establishing a prima facie case of negligence, "there is no genuine dispute as to any material fact and [Defendant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment for Defendant.

### II. FACTUAL AND PROCEDURAL BACKGROUND

This case has had its share of twists and turns. Plaintiff initially filed this action in pro per on September 6, 2024. Dkt. 1. As the Court has already noted, the initial Complaint alleged "failure to obtain informed consent, medical battery, and negligence against the United States in connection with an angiogram procedure that Plaintiff underwent in September 2019 at Navy Medical Center San Diego ('NMCSD')." *See* Dkt. 91 at 1. After Plaintiff obtained counsel, the parties litigated the pleadings through dispositive motion practice. *See generally* Dkt. 6 – Dkt. 16. The United States ultimately answered Plaintiff's Second Amended Complaint ("SAC"). Dkt. 17 – Dkt. 18. Like the initial complaint, the SAC alleges failure to obtain informed consent, medical battery, and negligence against

the United States arising out of the September 2019 angiogram. Dkt. 17; Dkt. 91 at 2.

After the United States filed its Answer, the parties conducted their Rule 26(f) conference and commenced discovery in this action in an otherwise normal fashion, at least for a while. *See* Dkt. 19 – Dkt. 33. Then, between August 2024 and March 2025, Plaintiff and his counsel fell out over "irreconcilable differences." Dkt. 45. This breakdown led to multiple requests by Plaintiff's counsel to withdraw (with the Court ultimately granting leave to withdraw on July 10, 2025). *See* Dkt. 34, 45, 58, 60. Thus began a protracted process of Plaintiff—once again proceeding in pro per, but with his wife acting on his behalf because he suffers from amyotrophic lateral sclerosis ("ALS") that prevents him from speaking or writing—seeking to amend his Complaint to allege a connection between his ALS diagnosis and the angiogram at issue in the operative pleading. *See generally* Dkt. 64 – Dkt. 70; Dkt. 84 – Dkt. 91. The Court ultimately denied Plaintiff's request to further amend the pleadings. Dkt. 91. The SAC remains the operative Complaint in this action, which concerns only whether the September 2019 angiogram was negligently performed. *See generally id.*

Notwithstanding the procedural back and forth over the pleadings—complicated by Plaintiff's failing health and a government shutdown—the parties to this action have steadily completed discovery and prepared this matter for trial, asking for (and receiving) six continuances of various scheduling order deadlines, with each request supported by good cause. *See generally* Dkt. 36, 42, 43, 48, 61, 72, 78, 79, 84, 96, 97. The United States, which has consistently followed the Court's scheduling order deadlines and accommodated Plaintiff's needs, has diligently completed its discovery, including the designation of expert witnesses who can opine as to the applicable standard of care and medical causation. *See* Declaration of Ian Pike in Support of Motion for Summary Judgment ("Pike Decl.") ¶ 2, Ex. A. Plaintiff did not produce any expert designations, timely or otherwise. *Id.* ¶ 3. The United States now seeks summary judgment on the basis that Plaintiff, who has no experts, can never establish either the standard of care or medical causation in this case.

////

## III. ARGUMENT

Summary judgment is proper when the record, taken in the light most favorable to the non-moving party, demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the trier of fact "could return a verdict for the nonmoving party." *Id.*

When the "nonmoving party will bear the burden of proof at trial," the party urging summary judgment shoulders the initial burden of demonstrating "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). This may be accomplished by "'showing'—that is, pointing out through argument—the absence of evidence[.]" *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the non-moving party to "go beyond the pleadings and identify facts which show a genuine issue for trial." *Id.* at 531. The summary-judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is warranted here because Plaintiff cannot make out a prima facie case of negligence under the controlling law.

### (A) California Tort Law Supplies the Rule of Decision, Which Requires Expert Testimony to Prove Medical Negligence

Under the Federal Tort Claims Act, the United States is only liable to the extent it would be liable as a private person under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005). "In this case, because the allegedly negligent act took place in California, California provides the controlling law." *Id.*

Under California law, "[t]he elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection

between the negligent conduct and the injury; and (4) resulting loss or damage." *Johnson v. Superior Ct.*, 143 Cal. App. 4th 297, 305 (2006). Establishing the standard of care "is the key issue in a malpractice action and can only be proved by expert testimony, unless the circumstances are such that the required conduct is within the layperson's common knowledge." *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015). Proof of causation likewise requires expert testimony. *Miranda v. Bomel Constr. Co., Inc.*, 187 Cal. App. 4th 1326, 1336 (2010); *see also Salasguevara v. Wyeth Labs., Inc.*, 222 Cal. App. 3d 379, 385 (1990) ("[M]edical causation can only be determined by expert medical testimony."). Thus, as a straightforward application of controlling California tort law, Plaintiff must establish the standard of care *and* causation using expert testimony.

**(B) Plaintiff's Claims Each Allege Medical Negligence, Which Requires Proof of the Standard of Care to Make Even a Prima Facie Showing**

In the operative pleading, Plaintiff alleges three separate counts: failure to obtain informed consent, medical battery, and negligence. *See generally* Dkt. 17 at 14–17. Under California law, the failure to obtain informed consent is a specific cause of action for medical malpractice. *See* CACI 533; *Warren v. Schecter*, 57 Cal. App. 4th 1189, 1200 (1997). Proving a claim for failure to obtain informed consent requires establishing the applicable standard of professional care through expert testimony. *See Vandi v. Permanente Med. Grp.*, 7 Cal. App. 4th 1064, 1071–72 (1992). It also requires proof of medical causation. *See* CACI 533.

Under California law, "medical battery" is actually a form of negligence that arises when a plaintiff consents to a medical procedure, yet the treating physician performs the procedure in a manner that exceeds the scope of the plaintiff's consent. *See generally Cobbs v. Grant*, 8 Cal. 3d 229, 240–41 (1972). The distinction is a muddy one, but, as the California Supreme Court has held:

> The battery theory [of intentional tort] should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that

> treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence.

*See id.* And when a medical battery claim falls within the scope of a cause of action for negligence, a plaintiff hoping to prevail must establish the standard of care for disclosing information that would affect the consent given. *Id.* at 241. Proof of medical battery also requires proof of medical causation. *See* CACI 530A. This Court has already ruled Plaintiff may proceed on two separate theories of negligence related to the failure to obtain informed consent: first, that Plaintiff was not apprised of the risks of the procedure up-front; or, in the alternative, that Plaintiff received medical care exceeding the scope of his consent, yet nonetheless falling within the realm of negligence and not rising to the level of true battery. *See* Dkt. 16 at 10–11.[1]

Finally, Plaintiff's catch-all count for negligence (as it must under the controlling law) alleges breach of the applicable standard of care and medical causation. *See* Dkt. 17 at ¶¶ 7.1–7.4. Thus, every actionable claim in the SAC alleges professional medical negligence in some form or another. Plaintiff must introduce expert testimony establishing both the standard of care and causation.

The only exception would be if Plaintiff could show the "common knowledge" exception to the expert requirement applies. *See Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 1001 (1994). However, the "common knowledge" exception is "principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur," such as where an x-ray reveals a "a scalpel left in the patient's body following surgery." *Id.* In those cases, even a lay person can understand that does not happen unless somebody was negligent. *See id.*; *see also Engelking v. Carlson*, 13 Cal. 2d 216, 221 (1939) (collecting cases), *disapproved on other grounds by Seneris v. Haas*, 45 Cal. 2d 811, 827

[1] Plaintiff must proceed, if at all, on a negligence theory of medical battery because a claim for true battery would be barred by the FTCA exception for intentional torts. *See* 28 U.S.C. § 2680(h).

(1955). That narrow exception has no place in this case.

Consider some of the allegations in this case: Plaintiff's claims involve multiple alleged failures to properly weigh the risks of various medical procedures. *See* Dkt. 1 ¶ 7.3 Plaintiff claims his physician conducted an "angiogram despite the fact it did not meet the threshold for medical necessity in the setting of a tortuous artery." *Id.* And he alleges, among other things, a failure "to perform an NIH stroke scale assessment and provide effective stroke treatment to prevent permanent brain damage." *Id.* No reasonable factfinder could draw upon its fund of common knowledge to infer the duty of care that a competent physician would exercise in these circumstances, or any of the other circumstances alleged in the SAC. Thus, the "common knowledge" exception to the expert requirement cannot apply here, and Plaintiff cannot make out even a prima facie case of negligence without the benefit of expert evidence.

**(C) Plaintiff Cannot Meet His Burden of Going Forward at Trial Because He Has No Expert Evidence**

When a plaintiff cannot come forward with expert evidence to support a malpractice claim, summary judgment is the proper vehicle to dispose of the claim because the plaintiff can never raise genuine factual issues as to the applicable standard of care or medical causation. *See Hutchinson v. United States*, 838 F.2d 390, 393 (9th Cir. 1988). Parties must disclose the identities of any witnesses they intend to call as experts at trial. Fed. R. Civ. P. 26(a)(2)(A). Retained experts must also provide detailed reports disclosing the substance of (and bases for) their expert opinions. *Id.* R. 26(a)(2)(B). Expert disclosures must be made according to the deadlines ordered by the Court. *Id.* R. 26(a)(2)(D). If a party fails to disclose its experts, it may not introduce those experts' testimony at trial or as evidence on a motion. *Id.* R. 37(c)(1). Rule 37(c)(1) "gives teeth" to the pretrial disclosure requirements enumerated in the Federal Rules of Civil Procedure. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The Rule 37(c)(1) exclusion rule is "automatic," and it will apply even "when a litigant's entire cause of action or defense has been precluded" because essential evidence is excluded under Rule 37. *Id.* (citing *Ortiz-*

*Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001)); *see also Silong v. United States*, No. CV F 06-474 LJO DLB, 2007 WL 2712100, at *6–7 (E.D. Cal. Sept. 14, 2007) (granting summary judgment where a plaintiff failed to comply with Rule 26 expert disclosures and was therefore precluded from introducing any expert evidence at trial).

The operative Scheduling Order in this matter set a deadline of April 20, 2026, for the parties to designate their expert witnesses. Dkt. 96 at 2. The United States produced expert designations as ordered. *See* Pike Decl. ¶ 2, Ex. A. Plaintiff neither produced expert designations by April 20, 2026, nor at any point thereafter. *Id.* ¶ 3. Thus, if this Court were to hold a trial, Plaintiff would have no expert evidence, and he could never make even a prima facie showing as to what the standard of care would be or whether any alleged negligence caused his injuries. The United States would be entitled to judgment as a matter of law. This is doubly true because, unlike Plaintiff, the United States, having properly designated experts, could introduce expert testimony and tip the balance of evidence inexorably in its favor. No matter what the evidence showed at trial, the Court can never return a verdict for Plaintiff and should therefore grant summary judgment for Defendant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV. **CONCLUSION**

Plaintiff must establish both the standard of care and medical causation as essential elements of all his claims. Proving either is impossible without competent expert testimony. Plaintiff has no experts. A trial would, therefore, be futile in this action, and the Court should grant summary judgment in Defendant's favor.

DATED: May 29, 2026

Respectfully submitted,

ADAM GORDON
United States Attorney

s/ *Ian Pike*
Betsey Boutelle
Ian Pike
Attorneys for Defendant